# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH KAMPFER, | ) | CASE NO. 3:14-cv-02849 |
| | ) | |
| *Plaintiff*, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | |
| | ) | |
| FIFTH THIRD BANK, et al. | ) | |
| | ) | |
| *Defendants.* | ) | |

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO KAMPFER'S MOTION FOR CONDITIONAL CERTIFICATION

---

Defendants Fifth Third Bank, Fifth Third Financial Corporation, and Fifth Third Bancorp (collectively, "Fifth Third") respectfully request that the Court deny Plaintiff Kampfer's Motion for Conditional Certification. The claims raised by Kampfer in this action already have been the subject of a collective action in another jurisdiction, and her request to certify another, nearly-identical collective action is both unnecessary and contrary to the purpose of the FLSA's collective action mechanism. Furthermore, the Motion must be denied because Kampfer has not satisfied her burden of demonstrating that she is similarly situated to the Opt-In Plaintiffs and/or the putative class members.

Fifth Third's Memorandum in Opposition to Kampfer's Motion for Conditional Certification is attached. This case has been designated for the standard track, and Fifth Third's Opposition complies with Local Rule 7.1(f) in that it does not exceed 20 pages.

Respectfully submitted,

 */s/ David K. Montgomery*
David K. Montgomery (#0040276)
Jamie M. Goetz-Anderson (#0083562)
**JACKSON LEWIS P.C.**
PNC Center, 26th Floor, 201 E. Fifth Street
Cincinnati, OH 45202
Ph: (513) 898-0050; Fax: (513) 898-0051
Email: david.montgomery@jacksonlewis.com
        jamie.goetz-anderson@jacksonlewis.com


*And*



Jeffrey B. Keiper (#0063133)
Corey Donovan Tracey (#0075164)
**JACKSON LEWIS P.C.**
Park Center Plaza I, Suite 400
6100 Oak Tree Boulevard
Cleveland, Ohio 44131
Ph: (216) 750-0404; Fax: (216) 750-0826
Email: jeffrey.keiper@jacksonlewis.com
        corey.tracey@jacksonlewis.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

**BRIEF STATEMENT OF ISSUE** ......................................................................................... iv

**SUMMARY OF ARGUMENT** .......................................................................................... iv

**I.**     **INTRODUCTION** .................................................................................................... 1

**II.**    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND** ........................... 3

      A.     Fifth Third's Retail Operations .............................................................. 3

      B.     Another Former CSM Already Brought A Collective Action Regarding
These Claims........................................................................................... 4

      C.     Kampfer Purposefully Chose Not To Join The *Stallard* Litigation So That
She Could File This Duplicative Action Seeking To Re-Solicit Individuals
Who Already Chose Not To Participate. ................................................. 4

**III.**   **ARGUMENT** ........................................................................................................... 5

      A.     The Court Should Decline Kampfer's Request To Conditionally Certify
A Class Of The Already Solicited And Unequivocally Uninterested.................... 7

      B.     Conditional Certification Must Be Denied Because Kampfer Has Not
Satisfied Her Burden Of Proving That She Is Similarly Situated To The
Putative Class Members........................................................................ 10

            1.     Kampfer And The Putative Class Members Were Not Subject To The
Same Pay Practices Or Policies. ................................................. 11

            2.     The Job Duties Performed By Kampfer And The Putative Class
Members Varied Significantly.................................................... 13

            3.     Kampfer And The Putative Class Members Are Subject To Unique
Defenses That Preclude Conditional Certification. .................... 17

      C.     Kampfer's Proposed Class Definition And Notice Form Are Improper. ............. 19

**IV.**    **CONCLUSION** ..................................................................................................... 20

i

# TABLE OF AUTHORITIES

CASES

*Adams v. Hy-Vee, Inc.,* No. 11-00449-CV-W-DW,
2012 U.S. Dist. Lexis 98590 (W.D. Mo. May 22, 2012)…………………………………6

*Anderson v. McCarthy, Burgess & Wolff, Inc.,* No. 1:14-CV-617,
2015 U.S. Dist. Lexis 5198 (N.D. Ohio Jan. 15, 2015)……………………………6, 7, 11

*Blake v. Hewlett-Packard Co,* No. 4:11-CV-592,
2013 U.S. Dist. Lexis 98690 (S.D. Tex. July 11, 2013)…………………………………12

*Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006)……………………………...6

*Copello v. Boehringer Ingelheim Pharmaceuticals, Inc.,*
812 F. Supp. 2d 886 (N.D. Ill. 2011)…………………………………………………………...9

*Cox v. Entertainment U.S.A. of Cleveland, Inc.,* No. 1:13-CV-2656,
2014 U.S. Dist. Lexis 121455 (N.D. Ohio Aug. 29, 2014)……………………………7, 11

*Creely v. HCR ManorCare, Inc.,* 789 F. Supp. 2d 819 (N.D. Ohio 2011)…………………6, 7, 11

*Davis v. Mostyn Law Firm, P.C.,* No. 4:11-cv-02874,
2012 U.S. Dist. Lexis 6014 (S.D. Tex. Jan. 19, 2012)………………………………13-14

*Frye v. Baptist Memorial Hospital, Inc.,* 495 Fed. Appx. 669 (6th Cir. 2012)…………………19

*Grace v. Family Dollar Stores, Inc.,* 3:08 MD 1932,
2009 U.S. Dist. Lexis 59154 (W.D.N.C. July 9, 2009)…………………………………15

*Guinup v. Petr-All Petroleum Corp.,* 07-1120,
2010 U.S. Dist. Lexis 86280 (N.D.N.Y. Aug. 23, 2010)………………………………...15

*Hoffman-La Roche v. Sperling,* 493 U.S. 165 (1989)…………………………………………..6, 8

*Hurt v. Commerce Energy, Inc.,* No. 1:12-CV-00758,
2013 U.S. Dist. Lexis 116383 (N.D. Ohio Aug. 15, 2013)………………………………..4

*Meyers v. GC Services Corp.,* No. 3:09-CV-1242,
2010 U.S. Dist. Lexis 25764 (S.D. W.Va. March 18, 2010)……………………………...9

*Najor v. Sims,* No. 10-14307, 2011 U.S. Dist. Lexis 84243 (E.D. Mich. Aug. 1, 2011)………….6

*O'Brien v. Ed Donnelly Enterprises, Inc.,* 575 F.3d 567 (6th Cir. 2009)………………………..17

*O'Neal v. Emery Fed. Credit Union,* No. 1:13CV22,
2014 U.S. Dist. Lexis 167419 (S.D. Ohio Dec. 3, 2014)………………………………...12

*Ortiz v. Panera Bread Co.,* No. 1:10-CV-1424,
    2011 U.S. Dist. Lexis 85463 (E.D. Va. Aug. 2, 2011)……………………………………9

*Ruiz v. Serco, Inc.,* No. 10-cv-394-bbc,
    2011 U.S. Dist. Lexis 91215 (W.D. Wis. Aug. 5, 2011)………………………………...13

*Shipes v. Amurcon Corp.,* No. 10-14943,
    2012 U.S. Dist. Lexis 39794 (E.D. Mich. Mar. 23, 2012)………………………………13

*Triggs v. Lowe's Home Centers, Inc.,* No. 1:13-CV-1897,
    2014 U.S. Dist. Lexis 115775 (N.D. Ohio Aug. 19, 2014)…………………………7, 11

*Troche v. Bimbo Foods Bakeries Distribution, Inc.,* No. 3:11CV234-RJC-DSC,
    2011 U.S. Dist. Lexis 90738 (W.D. N.C. Aug. 12, 2011)………………………………..9

*Waggoner v. U.S. Bancorp.,* No. 5:14-CV-01626,
    2015 U.S. Dist. Lexis 81918 (N.D. Ohio June 24, 2015)……………………………...17

## STATUTES

29 U.S.C. §216(b)………………………………………………………………………5-6

29 U.S.C. §255(a)………………………………………………………………………18, 19

29 U.S.C. §256………………………………………………………………………………...18

## REGULATIONS

29 C.F.R. §541.100(a)………………………………………………………………………13

29 C.F.R. §541.700(b)………………………………………………………………………...15

### BRIEF STATEMENT OF ISSUE

Has Kampfer satisfied her burden of proving that she is similarly situated to the Opt-In Plaintiffs and putative class members such that conditional certification of this case as a collective action pursuant to the Fair Labor Standards Act is appropriate?

### SUMMARY OF ARGUMENT

Kampfer's request to conditionally certify this case as a collective action must be denied. The claim raised by Kampfer in this case already has been the subject of another FLSA collective action filed by the same attorneys. Although Kampfer could have joined that case, she deliberately declined to participate in that action so that she could bring another duplicative collective action. The FLSA collective action mechanism was designed to foster judicial efficiency, but Kampfer's request would create the exact opposite result. The Court should decline her invitation to undermine the FLSA in this manner.

Furthermore, Kampfer's request for conditional certification must be denied because she has not satisfied her burden of proving that she is similarly situated to the Opt-In Plaintiffs or the putative class members. First, some members of the putative class were paid on a salary basis and some were paid on an hourly basis; as a result, they cannot be similarly situated. Second, the day-to-day job duties of Kampfer and the Opt-In Plaintiffs varied so significantly that they cannot be considered similarly situated. And, finally, Kampfer, the Opt-In Plaintiffs, and the putative class members are subject to unique defenses that preclude conditional certification.

Kampfer's Motion for Conditional Certification must be denied.

## I.     INTRODUCTION

Although the FLSA's collective action mechanism is designed to promote efficiency and avoid duplicative litigation, Kampfer attempts to misuse it to achieve the exact opposite effect here: To require the expenditure of substantial, unnecessary time and resources to repeat another FLSA collective action, which she admits (and, indeed, advertises) was virtually identical to this case. The Court must decline Kampfer's invitation to undermine the FLSA in this manner.

In the *Stallard* litigation, the plaintiffs asserted the same claim against Fifth Third for alleged unpaid overtime wages based on Fifth Third's previous classification of its Customer Service Manager ("CSM") position as exempt under the Fair Labor Standards Act. The *Stallard* case was conditionally certified as a collective action, notice was sent to over 2,000 current and former CSMs, and approximately 500 class members joined the lawsuit before it was resolved. Kampfer was solicited in the *Stallard* case and purposefully chose not to join it so that she could instead bring another, duplicative collective action. She has alleged the same claims against Fifth Third, and now seeks to conditionally certify the case so that she can solicit the same class of employees who were solicited in *Stallard* and who largely declined to participate. While Kampfer certainly may pursue her individual FLSA claim, she should not be permitted to bring her claim as a collective action. Maintaining multiple collective actions of the same claims is the antithesis of judicial efficiency and, as a result, the Court should deny Kampfer's request to conditionally certify a class of the already solicited and demonstrably uninterested.

This conclusion is particularly apparent considering that Kampfer cannot articulate any credible explanation for her deliberate decision to decline the opportunity to litigate her claims as part of the *Stallard* case. Instead, she has submitted a declaration in which she falsely claimed that she did not join the *Stallard* case because she feared "retaliation" from Fifth Third for her participation. In reality, Kampfer retired from Fifth Third long before the *Stallard* notices even

1

were sent.  Moreover, she admitted under oath that she was interested in joining the *Stallard* case, but decided not to participate in that case as a result of her discussion with class counsel (who, not surprisingly, is the same counsel who Kampfer retained to bring this case).  In the absence of any reasonable justification as to why the Court should permit Kampfer to generate the duplicative collective action that she seeks, Kampfer's Motion must be denied.

Furthermore, even notwithstanding the fact that another collective action is unnecessary under these circumstances, Kampfer's Motion still must be denied because she has not satisfied her burden of establishing that she is similarly situated to the Opt-In Plaintiffs, much less the putative class members.  Initially, Kampfer's proposed class includes individuals who were classified as exempt and paid on a salary basis, as well as individuals who were classified as non-exempt and paid on an hourly basis.  As a result, Kampfer and the putative class members are not, and cannot be, similarly situated.  Moreover, significant differences exist in the day-to-day job duties of Kampfer and the putative class members such that the determination of whether any one class member properly was classified as exempt would not resolve that issue as to the remaining class members, and conditional certification therefore is improper.  And, finally, Kampfer and the putative class members are subject to unique defenses which also preclude conditional certification.  Indeed, because Kampfer chose not to join the *Stallard* case and instead waited to file this action, she allowed the ordinary two-year statute of limitations for her claim to expire.  She now must prove that Fifth Third willfully violated the FLSA in order to recover any damages for the few months that she was employed as a CSM during the three-year statute of limitations period – a burden not shared by many other members of the putative class.

Accordingly, Fifth Third respectfully requests that the Court deny Kampfer's Motion for Conditional Certification.

2

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Fifth Third's Retail Operations

Fifth Third currently has operations in 15 affiliates or regions, covering 12 states: Ohio, Florida, Georgia, Illinois, Indiana, Kentucky, Michigan, Missouri, North Carolina, Pennsylvania, Tennessee, and West Virginia.  (Declaration of Stephanie Daniel ("Daniel Decl." at ¶3.)[1]  Fifth Third has approximately 1,300 retail operations (referred to as Financial Centers), some of which are traditional bank branches.  (*Id.* at ¶4.)  The bank also has a variety of alternative retail operations, including Bank Marts (which are located within grocery stores) and Banks of the Future (at which customers complete their transactions electronically rather than with a teller). (*Id.*)  Although the staffing at each Financial Center varies depending on the Financial Center's clientele and business needs, until recently most Financial Centers typically were staffed with a Financial Center Manager ("FCM"), one or more Customer Service Managers ("CSM"), a number of tellers (referred to as Customer Service Representatives ("CSRs")), and a variety of other positions.  (Declaration of Meaghan Ruehl ("Ruehl Decl.") of ¶3.)[2]

Fifth Third previously classified CSMs as exempt employees and paid them on a salary basis.  (*Id.* at ¶4.)  Beginning in September 2014, however, Fifth Third re-classified its CSMs as non-exempt employees and began to pay them on an hourly basis, including overtime for any hours worked over 40 per week.  (*Id.* at ¶5.)

In approximately 2011, as a result of changing business conditions and the evolving needs of its Financial Centers, Fifth Third began to phase out the CSM position.  (*Id.* at ¶6.) Fifth Third has hired few, if any, new CSMs since 2014, and the CSM position was completely eliminated by December 31, 2014.  (*Id.* at ¶7.)  Fifth Third no longer employs any CSMs.  (*Id.*)

---

[1] The Declaration of Stephanie Daniel is attached as Exhibit 1.
[2] The Declaration of Meaghan Ruehl is attached as Exhibit 2.

### B. Another Former CSM Already Brought A Collective Action Regarding These Claims.

In August 2012, Amanda Stallard, a former CSM for Fifth Third, filed a lawsuit in the Western District of Pennsylvania alleging that she had been improperly classified as an exempt employee under the FLSA during the period she was employed as a CSM. *See Stallard v. Fifth Third Bank, et al*., Case No. 2:12-cv-01092 (W.D. Pa.). In her Complaint, Stallard purported to bring her claim on behalf of herself and a putative collective of other CSMs. (*See id.*)

In *Stallard*, the parties exchanged written discovery, produced documents, and took depositions prior to briefing Stallard's request for conditional certification.[3] (*See, e.g.,* Lesser Decl., Dkt. No. 33-1, at ¶¶3, 5-7, 10-11, 14-15.) Ultimately, the court conditionally certified the *Stallard* case as a collective action in December 2013. (*See id.* at ¶16.) Notices were sent to approximately 2,100 current and former CSMs in March 2014. (Daniel Decl. ¶6.) By the time the notice period ended, approximately 546 class members had opted into the lawsuit; the remaining putative class members chose not to join. (*Id.* at ¶7.) The parties ultimately resolved all the claims asserted by Stallard and those who opted into the case through June 18, 2014, and the case was dismissed months later – shortly after this action was filed. (*Id.* at ¶8.)

### C. Kampfer Purposefully Chose Not To Join The *Stallard* Litigation So That She Could File This Duplicative Action Seeking To Re-Solicit Individuals Who Already Chose Not To Participate.

Just months after the parties settled the *Stallard* litigation, Kampfer filed this action in December 2014, virtually duplicating the FLSA claim asserted in *Stallard*.[4] (*See* Compl.) Like Stallard, Kampfer has alleged that she improperly was classified as exempt during her tenure as a

---

[3] Notably, Kampfer primarily relies on the information and documents gathered during the *Stallard* case in support of her Motion here. (*See* Lesser Decl.)

[4] Kampfer also has asserted a claim for overtime wages under Ohio law. (*See* Compl.) Under Ohio law, however, there is no collective action mechanism similar to the FLSA; rather, Kampfer will have to seek class certification pursuant to Rule 23, which she has not yet done. *See Hurt v. Commerce Energy, Inc.,* No. 1:12-CV-00758, 2013 U.S. Dist. Lexis 116383 (N.D. Ohio Aug. 15, 2013).

CSM, and seeks payment for the hours she claims to have worked in excess of 40 per week.  (*See id.*)  Also like Stallard, Kampfer seeks to bring her FLSA claim as a collective action.  (*See id.*)

The parties established a bifurcated discovery schedule, with the first phase of discovery limited to issues relating to conditional certification.  (*See, e.g.,* Report of Parties' Planning Meeting, Dkt. No. 28 ("The parties propose **bifurcated discovery:** the first phase should be limited to conditional-certification issues; the second phase should proceed only after a decision on conditional certification has been entered.") (emphasis in original).)  Consistent with this approach, the parties engaged in discovery relating to the issue of conditional certification. Kampfer served written discovery on Fifth Third, including interrogatories and 60 requests for production.  (Declaration of David K. Montgomery ("Montgomery Decl.") at ¶3.)[5]  Fifth Third provided written responses and produced hundreds of pages of documents (in addition to the voluminous documents that previously had been produced in the *Stallard* litigation).  (*Id.* at ¶4.) Conversely, Fifth Third served written discovery requests on, and took the depositions of, Kampfer and Opt-In Plaintiffs Fritz, Sipos, and McGregor.  (*Id.* at ¶¶5-6.)

On May 7, 2015, Kampfer filed the instant Motion for Conditional Certification, asking the Court to conditionally certify this case as a collective action and permit her to send solicitations to a class of individuals consisting of all CSMs who worked in that position between May 7, 2012 and May 7, 2015 and whose claims were not settled (or not completely settled) by the *Stallard* litigation.  For the reasons described below, Kampfer's request must be denied.

**III.    ARGUMENT**

The FLSA permits a cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b).  Putative class members are required to opt-in to the action by providing their consent

---

[5] The Declaration of David K. Montgomery is attached as Exhibit 3.

5

in writing and filing the consent with the Court. *Id.* One of the primary purposes of providing a collective action mechanism is the "efficient resolution in one proceeding of common issues of law and fact from the same alleged discriminatory activity." *Hoffman-La Roche v. Sperling,* 493 U.S. 165, 170 (1989). *See also Najor v. Sims,* No. 10-14307, 2011 U.S. Dist. Lexis 84243 (E.D. Mich. Aug. 1, 2011) ("The purpose of collective actions under the FLSA is judicial efficiency."); *Adams v. Hy-Vee, Inc.,* No. 11-00449-CV-W-DW, 2012 U.S. Dist. Lexis 98590 (W.D. Mo. May 22, 2012) ("The purpose behind collective actions is to allow for a streamlined and efficient adjudication of the claims of similarly situated plaintiffs.").

The Sixth Circuit employs a two-stage certification process to determine whether a proposed group of plaintiffs is similarly situated for purposes of a collective action. *See Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006). At the first stage, the plaintiff must make a "modest factual showing" that she is similarly situated to the putative class members. *Id.* at 546-47. While the evidentiary threshold at this stage is not particularly high, it also is not illusory; rather, a plaintiff must demonstrate "a factual nexus – that is, something more than mere allegations – to warrant conditional certification and the delivery of notice to potential class members." *Anderson v. McCarthy, Burgess & Wolff, Inc.,* No. 1:14-CV-617, 2015 U.S. Dist. Lexis 5198 (N.D. Ohio Jan. 15, 2015).

Where, as here, the parties have had the opportunity to conduct discovery on the issue of conditional certification, courts hold the plaintiff to a higher standard for conditional certification – typically referred to as a "modest plus" standard. *See, e.g., Creely v. HCR ManorCare, Inc.,* 789 F. Supp. 2d 819 (N.D. Ohio 2011) ("[C]ourts generally agree that allowing the parties to conduct some targeted discovery regarding the conditional certification question takes the question beyond the stage one evidentiary boundaries of the complaint's allegations and

supporting affidavits."). *See also Triggs v. Lowe's Home Centers, Inc.,* No. 1:13-CV-1897, 2014 U.S. Dist. Lexis 115775 (N.D. Ohio Aug. 19, 2014) (applying "modest plus" standard); *Cox v. Entertainment U.S.A. of Cleveland, Inc.,* No. 1:13-CV-2656, 2014 U.S. Dist. Lexis 121455 (N.D. Ohio Aug. 29, 2014) (same); *Anderson,* 2015 U.S. Dist. Lexis 5198 (same).  Importantly, under this intermediate standard, the Court may consider in its analysis the factors commonly considered under stage two of the conditional certification analysis, including "(1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with respect to individual plaintiffs; and (3) fairness and procedural considerations."  *Creely,* 789 F. Supp. 2d at 823, 826; *see also Triggs,* 2014 U.S. Dist. Lexis 115775 at *7.  "In other words, the Court will review whether [the plaintiffs] have advanced the ball down the field – showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs." *Creely,* 789 F. Supp. 2d at 827.

### A. The Court Should Decline Kampfer's Request To Conditionally Certify A Class Of The Already Solicited And Unequivocally Uninterested.

Initially, there is no dispute that Kampfer seeks to solicit a class of individuals who already had the opportunity to opt into a collective action to pursue claims for alleged overtime (in the *Stallard* case), and ***chose not to do so***.  Kampfer does not deny – and, in fact, proudly promotes – that this case is a virtual carbon copy of the *Stallard* litigation.  (*See, e.g.,* Motion, p. 1 ("The issue presented by this motion is not one of first impression:  In *Stallard v. Fifth Third Bank,* the same motion was brought against the same defendants for the same job classification."); *see also* Lesser Decl., ¶¶3, 5-7, 10-11, 14-15 (citing deposition testimony and other evidence from the *Stallard* litigation).)  While Kampfer certainly is free to pursue her claims on an individual basis, her request to certify this case as a duplicative and unnecessary collective action must be denied.

The FLSA's collective action mechanism was created to <u>avoid</u> piecemeal litigation and promote judicial economy by allowing similarly situated individuals to pursue their claims collectively. *See, e.g., Hoffman-La Roche,* 493 U.S. at 170 (one of the primary purposes of the collective action mechanism is the "efficient resolution ***in one proceeding*** of common issues of law and fact from the same alleged discriminatory activity.") (emphasis added). What Kampfer is attempting to do here – re-litigate, on a collective basis, an issue that already has been litigated and resolved as a collective action – entirely undermines that purpose.

Stallard asserted her claim for allegedly unpaid overtime. The *Stallard* court conditionally certified that case, and Stallard and her counsel (who largely are the same attorneys who have been retained in this action) sent solicitations to the nearly 2,100 putative class members. The vast majority of the putative class members, after receiving notice of that lawsuit and having the opportunity to join, declined to participate. Shortly after the notice period ended, the parties settled the *Stallard* case. Just months after the *Stallard* case was resolved, Kampfer and her attorneys brought this case, asserting the <u>same</u> claim (against the <u>same</u> defendants under the <u>same</u> legal theory), seeking to again solicit the <u>same</u> group of (uninterested) employees, relying on the <u>same</u> evidence, and requesting the <u>same</u> relief. And, presumably, after this case has been resolved, another former CSM (probably with the assistance of the same counsel) will file another identical FLSA claim seeking conditional certification, and the process will repeat over and over again until the statute of limitations finally runs out. In short, Fifth Third will face collective action after collective action – and the same, uninterested employees will be solicited again and again. *This is not, and cannot be, what Congress intended when creating the collective action mechanism for FLSA claims.*

While the FLSA does not expressly prohibit the certification of a collective action where the claims already have been pursued in another collective action, courts typically disfavor duplicative collective actions.  *See, e.g., Troche v. Bimbo Foods Bakeries Distribution, Inc.*, No. 3:11CV234-RJC-DSC, 2011 U.S. Dist. Lexis 90738 (W.D. N.C. Aug. 12, 2011) (holding that it would be the "epitome of judicial waste" to allow a second, nearly identical FLSA collective action to proceed); *Ortiz v. Panera Bread Co.,* No. 1:10-CV-1424, 2011 U.S. Dist. Lexis 85463 (E.D. Va. Aug. 2, 2011) (dismissing second-filed putative FLSA collective action where both actions "assert claims based on the same legal theories against the same Defendant, on behalf of the same group of employees and seek the same remedies"); *Meyers v. GC Services Corp.,* No. 3:09-CV-1242, 2010 U.S. Dist. Lexis 25764 (S.D. W.Va. March 18, 2010) (transferring second, nearly-identical putative FLSA collective action and holding that "it is impossible to avoid the conclusion that litigating both cases would be duplicative and would be a waste of judicial resources and those of the parties."); *Copello v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 812 F. Supp. 2d 886 (N.D. Ill. 2011) ("[P]reventing [the plaintiff] from pursuing duplicative FLSA claims here would advance, not detract from, wise judicial administration.").

Moreover, Kampfer's primary justification for her duplicative collective action – to allow those who declined to participate in the *Stallard* litigation for fear of "retaliation" the opportunity to pursue their claims – does not withstand scrutiny.  Kampfer has not offered *any* credible evidence supporting her assertion that she (or anyone else, for that matter) effectively was denied the opportunity to pursue her claims in *Stallard* because of a legitimate fear that she would suffer adverse consequences as a result.  Although Kampfer submitted a declaration in which she stated – under penalty of perjury – that she did not join the *Stallard* case "because [she] was still employed and feared retaliation for joining it," her sworn deposition testimony reveals that this

9

statement is categorically untrue.  (*See* Kampfer Decl., Dkt. No. 33-2, ¶6.)  Kampfer, who retired from Fifth Third in February or March of 2013, no longer worked at Fifth Third in March 2014 when the *Stallard* notices were sent – and thus could not have feared "retaliation" from Fifth Third for joining that lawsuit.  (Daniel Decl. ¶6; Deposition of Judith Kampfer ("Kampfer Dep.") at 8.)[6]  Furthermore, Kampfer *admits* that "retaliation" was not the reason she declined to join the *Stallard* case: Rather, she testified that she received the *Stallard* notice and was interested in joining.  (Kampfer Dep. 53, 55.)  She filled out the notice form and returned it to class counsel. (*Id.* at 55.)  Greg Shavitz, class counsel, reached out to her; as a result of their conversation, Kampfer purposefully decided not to join the *Stallard* case and to file a duplicative action instead.  (*Id.* at 55-57.)

In short, allowing Kampfer to pursue her claim as a collective action, where she had (and declined) the opportunity to do so previously, subverts the clear purpose of the FLSA's collective action provision.  Absent any compelling reason to permit a duplicative collective action and authorize Kampfer to re-solicit those individuals who already declined to participate, Kampfer's request for conditional certification must be denied.

## B. Conditional Certification Must Be Denied Because Kampfer Has Not Satisfied Her Burden Of Proving That She Is Similarly Situated To The Putative Class Members.

Kampfer's Motion also must be denied because Kampfer has not satisfied her burden of establishing that she is similarly situated to the Opt-In Plaintiffs, much less to the putative class members.  As described above, the parties designated a specific period of time for conditional certification discovery, and both parties engaged in discovery – in addition to the voluminous discovery that previously had been conducted in the *Stallard* case (and on which Kampfer relies).  (*See* Dkt. No. 28; Montgomery Decl. ¶¶3-6.)  Accordingly, the "modest plus" standard is

---

[6] Relevant excerpts from the deposition of Judith Kampfer are attached as Exhibit 4.

the appropriate analysis. *See Creely,* 789 F. Supp. 2d 819; *Triggs*, 2014 U.S. Dist. Lexis 115775; *Cox,* 2014 U.S. Dist. Lexis 121455; *Anderson,* 2015 U.S. Dist. Lexis 5198.

Here, the putative class members are not similarly situated for the simple reason that they were not subject to the same pay practices or policies, as the proposed class includes individuals who were paid on a salary basis (and were not paid overtime for hours worked over 40) and some individuals who were paid on an hourly basis (and were paid overtime for hours worked over 40).  Absent a common pay practice binding their claims together, Kampfer's request for conditional certification fails.

Furthermore, Kampfer's Motion also must be denied because Kampfer cannot establish that she is similarly situated to the Opt-In Plaintiffs or the putative class members because their actual, day-to-day job duties and responsibilities varied significantly.  While Kampfer primarily relies on job descriptions and generic form declarations, she ignores her actual experiences and those of the Opt-In Plaintiffs, which illustrate the meaningful differences in their positions that preclude conditional certification.

Finally, the unique defenses that are applicable to some putative class members also preclude conditional certification.

1.  Kampfer And The Putative Class Members Were Not Subject To The Same Pay Practices Or Policies.

As described above, Fifth Third re-classified the CSM position as non-exempt in September 2014.  (Ruehl Decl. ¶5.)  After that point, CSMs were paid on an hourly basis and were paid overtime, at a rate of one and one-half times their regular rate, for any hours over 40 per week.  (*Id*.)  Kampfer's proposed class, however, includes ***all*** CSMs who were employed from May 7, 2012 through May 7, 2015 whose claims were not completely extinguished by the *Stallard* settlement.  (*See* Motion.)  Thus, the class for which Kampfer seeks conditional

certification includes some CSMs who were classified as exempt and paid on a salary basis (and were not paid overtime), and some CSMs who were classified as non-exempt and paid on an hourly basis (and were paid overtime). Because these putative class members were not subject to the same pay practices or policies, Kampfer's request for class certification must be denied. *See O'Neal v. Emery Fed. Credit Union,* No. 1:13CV22, 2014 U.S. Dist. Lexis 167419 (S.D. Ohio Dec. 3, 2014) (denying plaintiff's request for conditional certification where he did not present evidence of a "uniform compensation structure" for the proposed class, and the evidence actually demonstrated that the proposed class members were compensated in different manners).

Kampfer and the Opt-In Plaintiffs' own experiences illustrate this fundamental flaw in their proposed class. Kampfer and Opt-In Plaintiff McGregor both left the bank before the CSM position was re-classified, and thus were classified as exempt and paid on a salary basis for the entire time that they were CSMs. (*See* Kampfer Dep. 8; Deposition of Misty McGregor ("McGregor Dep.") at 12.)[7] In contrast, Opt-In Plaintiffs Sipos and Fritz remained in the CSM position after the position was re-classified; thus, they each were classified as non-exempt and paid on an hourly basis for at least part of their time as CSMs.[8] (Deposition of Brittany Fritz ("Fritz Dep.") at 6, 8; Deposition of Cynthia Sipos ("Sipos Dep.") at 28-29, 52.)[9] Under these circumstances, Kampfer and McGregor are not similarly situated to Fritz and Sipos. Courts consistently reject similar attempts to conditionally certify a class that includes both exempt and non-exempt employees. *See, e.g., Blake v. Hewlett-Packard Co,* No. 4:11-CV-592, 2013 U.S. Dist. Lexis 98690 (S.D. Tex. July 11, 2013) (denying conditional certification and holding that if

---

[7] Relevant excerpts from the deposition of Misty McGregor are attached as Exhibit 5.

[8] It does not appear that Plaintiffs allege that they were improperly paid under the FLSA after the CSM position was re-classified. (*See, e.g.,* Deposition of Cynthia Sipos ("Sipos Dep.") at 59-61 (confirming that after she was converted to a non-exempt employee, she was paid overtime at a rate of one and one-half times her regular rate for all hours she worked over 40 per week).)

[9] Relevant excerpts from the deposition of Brittany Fritz are attached as Exhibit 6. Relevant exhibits from the deposition of Cynthia Sipos are attached as Exhibit 7.

12

the plaintiff's class definition "includes both exempt and nonexempt employees, then the members of the putative class cannot be similarly situated."); *Shipes v. Amurcon Corp.,* No. 10-14943, 2012 U.S. Dist. Lexis 39794 (E.D. Mich. Mar. 23, 2012) (rejecting the plaintiffs' proposed class, which included both hourly and salary employees). Because Kampfer's proposed class includes both hourly and salary employees, she has not established that the putative class is similarly situated. Her request for conditional certification must be denied.

### 2. The Job Duties Performed By Kampfer And The Putative Class Members Varied Significantly.

In this action, Kampfer has alleged that Fifth Third improperly classified its CSMs as exempt under the FLSA's executive exemption. The executive exemption covers any employee:

(1) whose primary duty is management of the enterprise…or of a customarily recognized department or subdivision thereof;[10]

(2) who customarily and regularly directs the work of two or more other employees;

(3) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight; and

(4) who receives a salary of "not less than $455 per week.

29 C.F.R. § 541.100(a).

Here, Kampfer has alleged that all of the CSMs in the putative class performed the same job duties, and that none of them qualified for the executive exemption. (*See generally* Compl.) Not surprisingly, Kampfer relies on vague job descriptions and postings, generic form declarations, and the deposition testimony of individuals who were far removed from the CSMs' day-to-day work realities in support of her contention that the CSMs for whom she seeks conditional certification were similarly situated.[11] The evidence relating to the actual day-to-day

---

[10] The fact that members of a putative class may share "some similar or overlapping tasks" is insufficient to establish that they are similarly situated with respect to their primary duties. *See, e.g., Ruiz v. Serco, Inc.,* No. 10-cv-394-bbc, 2011 U.S. Dist. Lexis 91215 (W.D. Wis. Aug. 5, 2011).

[11] The mere fact that Plaintiffs and the putative class members shared the same job title is not sufficient to establish that they were similarly situated for purposes of conditional certification. *See, e.g., Davis v. Mostyn Law Firm, P.C.,*

job duties and responsibilities of Kampfer and the Opt-In Plaintiffs, however, reveals that their job duties varied significantly based on a number of factors, including the Financial Center at which they worked, the Financial Center Manager for whom they worked, the geographical region in which they worked, and the individual CSMs' unique experiences and strengths. As a result of the substantial differences among the putative class members, they cannot be considered similarly situated and conditional certification is improper.

Kampfer's own experiences as a CSM perfectly exemplify why conditional certification is improper here. Kampfer first worked as a CSM at a busy, successful Financial Center in Toledo.[12] This branch was one of the bank's top three most successful branches in the Northwest Ohio region. (Kampfer Dep. 19-20.) Kathy Perry, the FCM, generally was at the branch whenever it was open and handled nearly all aspects of the branch's management. (*Id.* at 22, 24.) The CSRs reported directly to Perry. (*Id.* at 22.) Kampfer did not complete their performance reviews, coach them, or even answer their questions. (*Id.* at 22, 71.) She never led the staff "huddles" that occurred each morning, did not create the schedule, and had no involvement in interviewing or hiring other employees. (*Id.* at 75, 83, 123-124.) Because the branch was so busy, Kampfer spent nearly all of her time working on the teller line. (*Id.* at 22, 27-28.)

Kampfer later transferred to a CSM position at a branch in Swanton, Ohio. (*Id.* at 34.) Whereas the Toledo branch was one of the most successful branches in the region, Swanton was a rural branch that was in the bottom ten percent in the region. (*Id.*) Emily Henderson, the FCM of the Swanton branch for the last two years of Kampfer's employment, was very sales-oriented

---

No. 4:11-cv-02874, 2012 U.S. Dist. Lexis 6014 (S.D. Tex. Jan. 19, 2012) (holding that "employees with the same job title are not 'similarly situated' for the purposes of an 'opt-in' FLSA class if their day-to-day job duties vary substantially.")(internal citation omitted).
[12] Kampfer frequently refers to this Financial Center as the "Byrne and Glendale" branch. (*See, e.g.,* Kampfer Dep. 19-20.)

and goal-driven. (*Id.* at 50.) As a result, unlike other FCMs with whom Kampfer had worked, Henderson spent significant time – two to three days a week – away from the branch calling on businesses and customers. (*Id.* at 50-51.) During the frequent occasions when Henderson was away from the branch, Kampfer was the highest-ranking employee at the branch. (*Id.* at 61.)

While she was a CSM at Swanton, Kampfer played a significant role in the management and supervision of the four or five CSRs who worked at the branch and reported directly to her. (*Id.* at 35-36.) Henderson instructed Kampfer that the focus of her position was supervising and coaching the CSRs. (*See id.* at 70; Kampfer Dep. Exs. 1, 2 ,4.) In fact, Henderson disciplined Kampfer because she was not sufficiently focused on her duties relating to coaching and training the CSRs. (*See* Kampfer Dep. 69-70; Kampfer Dep. Ex. 2.) Henderson even created unique training documents and forms that Kampfer used to document her coaching and training efforts with the CSRs. (Kampfer Dep. 68-69.) Kampfer was required to hold weekly and monthly observation and coaching sessions with the CSRs. (*Id.* at 95; Kampfer Dep. Ex. 2.)

In addition to coaching and training the CSRs, Kampfer completed and administered their annual performance reviews. (Kampfer Dep. 48, 64-66.) She also drafted any performance counselings or disciplinary warnings, and then discussed them with the employees. (*Id.* at 125-126.) Furthermore, Kampfer interviewed every CSR candidate and always made a recommendation as to whether she believed the bank should or should not hire the individual. (*Id.* at. 75, 76.) Henderson *never* declined to hire anyone who Kampfer had recommended. (*Id.*) Kampfer also led some of the branch's morning huddles, and created the branch's work schedule approximately forty percent of the time.[13] (*Id.* at 82-83, 123-124.)

---

[13] The amount of time an employee spends on exempt versus non-exempt tasks is not dispositive as to whether the employee satisfies the executive exemption. *See* 29 C.F.R. §541.700(b). *See also Grace v. Family Dollar Stores, Inc.*, 3:08 MD 1932, 2009 U.S. Dist. Lexis 59154 (W.D.N.C. July 9, 2009) (store manager who claimed to have spent 95% of her time on non-managerial "freight" duties was exempt); *Guinup v. Petr-All Petroleum Corp.*, 07-

15

In sum, Kampfer's job duties, responsibilities, and expectations as a CSM at Toledo were demonstrably different than those she had as a CSM at Swanton. Determining whether she satisfied the executive exemption requires a separate analysis for her tenure at the Toledo branch (where she had little, if any, supervisory responsibilities and no direct reports) than that required to make the same determination as to her CSM position at the Swanton branch (where she had multiple direct reports and significant supervisory and managerial responsibilities). In short, Kampfer cannot show that she was similarly situated to herself, much less the putative class members whom she seeks to solicit.

Moreover, the testimony of the Opt-In Plaintiffs further punctuates the stark differences between and among CSMs. During the period that Misty McGregor worked as a CSM, for example, she worked primarily at a small retail operation within the local Toyota manufacturing plant that was referred to as the Toyota Banking Center. (McGregor Dep. 15.) The Toyota Banking Center consisted of two office rooms inside the plant, and was only open to Toyota employees and contractors. (*Id.* at 16-17, 32.) The Toyota Banking Center did not maintain any cash onsite, other than in the ATMs. (*Id.* at 18.) McGregor worked ***alone*** at the Toyota Banking Center; there was no teller line or bank vault. (*Id.* at 17-18, 77.) No CSRs worked at the Toyota Banking Center with her, and she had no direct reports. (*Id.* at 17, 27.) As a result, she did not complete performance reviews for any other employees, engage in coaching and training activities, or perform any of the supervisory duties that other CSMs may have had. (*Id.* at 27, 38.) Instead, McGregor's job primarily involved waiting on customers, answering the phone, and completing non-cash transactions. (*Id.* at 17, 75-77.) Her CSM position had virtually nothing in common with Kampfer's position as a CSM at the Swanton branch.

---

1120, 2010 U.S. Dist. Lexis 86280 (N.D.N.Y. Aug. 23, 2010) (store manager who allegedly spent only 20% of her time on managerial tasks was executive exempt employee).

16

Because of the significant variance in job duties among Kampfer and the putative class members,[14] the determination of whether they were properly classified as exempt employees under the FLSA requires an individual analysis of each CSM's job duties and responsibilities. For example, the determination of whether Kampfer satisfied the exemption while she was a CSM at Swanton does not answer the question of whether she satisfied the exemption while she was employed as a CSM at Toledo, whether McGregor was properly classified during her tenure as a CSM at the Toyota Banking Center, or whether any other CSM met the FLSA's requirements for the exemption. In other words, proving that one CSM improperly was classified will not prove that any other CSM (let alone *all* other CSMs) also were improperly classified. Accordingly, Kampfer cannot satisfy her burden of establishing that she is similarly situated to the putative class. *See O'Brien v. Ed Donnelly Enterprises, Inc.,* 575 F.3d 567, 585 (6th Cir. 2009) ("[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs."). Her request for conditional certification must be denied.[15]

### 3. Kampfer And The Putative Class Members Are Subject To Unique Defenses That Preclude Conditional Certification.

Furthermore, conditional certification is inappropriate because Kampfer and the putative class members are subject to unique defenses such that they cannot be considered similarly situated. For example, in connection with the elimination of her position, Sipos received 26 weeks of severance pay in exchange for her execution of a Severance Agreement and General

---

[14] Opt-In Plaintiff Cynthia Sipos, for instance, had a unique expertise in operations-related functions. (Sipos Dep. 116.) As a result, she often was called upon to assist with operations issues – a duty not shared by Kampfer or the other Opt-In Plaintiffs. (*Id.*)

[15] *See also Waggoner v. U.S. Bancorp.,* No. 5:14-CV-01626, 2015 U.S. Dist. Lexis 81918 (N.D. Ohio June 24, 2015) (in a case brought by the same counsel and upon similar evidence, suggesting that the plaintiffs would not have satisfied their burden of demonstrating that they were similarly situated for purposes of conditional certification if the court had applied the "modest plus" standard).

Release of All Claims.  (*See* Sipos Dep. 80 (confirming that she reviewed and signed the agreement, and received the severance pay indicated); *see also* Sipos Dep. Ex. 1.)  In that agreement, ***Sipos affirmed that she had been paid all wages and other compensation to which she was entitled.***  (*See* Sipos Dep. Ex. 1 ("You agree that you have been paid and/or have received all compensation, wages, bonuses, commissions, and/or benefits to which you are entitled.").)  Sipos expressly was advised, in writing, to consult with an attorney prior to executing the separation agreement containing this affirmation.[16]  (*Id.*)  Because of this affirmation, Sipos cannot now credibly claim that she is owed any compensation by Fifth Third. Certainly Sipos – and any other putative class members who expressly have affirmed that they have been paid for all hours that they worked (and thus received all compensation to which they were entitled) – cannot be considered similarly situated to Kampfer, Fritz, and McGregor, whose very claims rest on their allegations that they were *not* paid for all of the hours that they worked and did *not* receive all of the compensation to which they believe they were entitled.  Given this irreconcilable conflict, Kampfer and the putative class members are not similarly-situated.

Furthermore, Fifth Third has statute of limitations defenses to the claims of some putative class members that are not applicable to others.  Under the FLSA, claims are subject to a two-year statute of limitations, unless the plaintiff can prove that the alleged violation was "willful," in which case a three-year statute of limitation applies.  *See* 29 U.S.C. §255(a).  The FLSA provides that in putative collective actions such as this one, the action commences (for statute of limitation purposes) for each individual as of the date that the individual files a written consent to join the collective action.  *See* 29 U.S.C. § 256.  This is true both for the named plaintiff and any

---

[16] Many other former CSMs were offered similar severance agreements when their CSM positions were eliminated. (*See* Ruehl Decl. ¶8.)

18

additional plaintiffs who later opt into the litigation.  *See Frye v. Baptist Memorial Hospital, Inc.,* 495 Fed. Appx. 669 (6th Cir. 2012).

Here, Fifth Third has statute of limitations defenses as to all or part of the claims asserted by Kampfer and some of the other individuals who already have opted-into the litigation. McGregor's employment with Fifth Third, for example, ended more than three years before she filed her notice of consent in this action.  (*See* Ruehl Decl. ¶9 (McGregor's employment with Fifth Third ended on February 6, 2012); Dkt. No. 26 (McGregor filed her notice of consent to sue in this action on February 20, 2015).)  Thus, her claims are barred under both the two-year and three-year statutes of limitation.  *See* 29 U.S.C. §255(a).  She is not similarly situated to putative class members who timely assert claims.

Likewise, Kampfer did not file her notice of consent in this action until April 21, 2015 – more than two years after she retired from Fifth Third in February or March 2013.  (Kampfer Dep. 8; Dkt. No. 30.)  Thus, in order to recover any damages, Kampfer *must* prove that Fifth Third's alleged violation of the FLSA was willful and, as a result, application of the three-year statute of limitations is appropriate.  This is not a burden shared by Fritz, Sipos, and any other putative class members who timely assert claims within the two-year statute of limitations.

As a result of these unique defenses that are applicable to some, but not all, of the putative class members, Kampfer has not established that she is similarly situated and conditional certification must be denied.

### C.  Kampfer's Proposed Class Definition And Notice Form Are Improper.

Finally, in the event that the Court grants Kampfer's Motion, Fifth Third objects to Kampfer's class definition.  Kampfer proposes sending notice to all CSMs who were employed for the three years prior to May 7, 2015.  (*See* Motion.)  Notice should be sent, at most, to those employed as CSMs in the three years prior to the date that the notice is sent.

Furthermore, Fifth Third objects to Kampfer's  proposed notice to the extent that it purports to reference the *Stallard* litigation, as that reference is unnecessary and potentially prejudicial. Fifth Third requests that if Kampfer's Motion is granted, the parties be given the opportunity to confer regarding the content and procedure for notice to the putative class members and submit to the Court a mutually-agreeable notice.

## IV.  CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Kampfer's Motion for Conditional Certification.

Respectfully submitted,

*/s/ David K. Montgomery*
David K. Montgomery (#0040276)
Jamie M. Goetz-Anderson (#0083562)
**JACKSON LEWIS P.C.**
PNC Center, 26th Floor, 201 E. Fifth Street
Cincinnati, OH  45202
Ph:  (513) 898-0050; Fax: (513) 898-0051
Email:  david.montgomery@jacksonlewis.com
         jamie.goetz-anderson@jacksonlewis.com

*And*

Jeffrey B. Keiper (#0063133)
Corey Donovan Tracey (#0075164)
**JACKSON LEWIS P.C.**
Park Center Plaza I, Suite 400
6100 Oak Tree Boulevard
Cleveland, Ohio  44131
Ph:  (216) 750-0404; Fax:  (216) 750-0826
Email:  jeffrey.keiper@jacksonlewis.com
         corey.tracey@jacksonlewis.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed and served upon all counsel of record through the Court's Case Management and Electronic Case Filing (CM/ECF) system on July 30, 2015.

> */s/ David K. Montgomery*
>  David K. Montgomery (#0040276)

4847-5117-9557, v.  1

21