UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Judith Kampfer,                          Case No. 3:14 cv 2849

         Plaintiff

    v.                                  MEMORANDUM OPINION

Fifth Third Bank, et al.,

         Defendants

## I. INTRODUCTION

Plaintiff Judith Kampfer initiated this action on December 31, 2014, against Defendants Fifth Third Bank, Fifth Third Financial Corporation, and Fifth Third Bancorp ("Fifth Third") alleging violations of the Fair Labor Standards Act by misclassifying Customer Service Managers ("CSMs") as exempt from FLSA's overtime requirements. Also alleged are violations of Ohio's Wage and Hour law brought on behalf of an Ohio class representative and the putative Ohio class.

In 2012, a similar FLSA collective action was commenced in the Western District of Pennsylvania against Fifth Third asserting similar allegations. *Stallard v. Fifth Third Bank, et al.*, Case No. 2:12 cv 1092 (W.D. Penn.). On December 12, 2013, the Pennsylvania district court conditionally certified the collective action and I am advised the *Stallard* litigation was concluded in February 2015, following approval of the collective action settlement by the Hon. Mark R. Hornak.

Although eligible, Plaintiff Kampfer did not opt-into the *Stallard* litigation.

This matter is before me on Plaintiffs' motion for conditional certification (Doc. No. 33) under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), Defendants' opposition (Doc.

No. 39) and Plaintiff's reply (Doc. No. 40). Also before me is Plaintiffs' motion for equitable tolling (Doc. No. 42), Defendants' opposition (Doc. No. 43), and Plaintiffs' response (Doc. No. 44). For the reasons that follow, Plaintiffs' motion for conditional certification is granted as is the motion for equitable tolling.

## II. APPLICABLE LEGAL STANDARD

Section 207 of the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in one workweek at a rate of one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1). A collective action under the FLSA is authorized under 29 U.S.C. § 216(b), "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

In considering a FLSA action, the Sixth Circuit has adopted a two-phase inquiry, the notice stage and the decertification stage. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The notice stage, applicable to the present action, occurs early in the case, generally at the beginning of discovery. At this stage, the court considers conditional certification "as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate." *Wiotkowski v. Michigan Bell Telephone Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010) (citation omitted). The determination is based upon a "fairly lenient standard." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011).

This fairly lenient standard requires only that the named and potential plaintiffs were victims of common, illegal plan or policy. *Comer*, 454 F.3d at 547; *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004). A plaintiff may prove she is similarly situated to potential plaintiffs by showing "they suffer from a single, FLSA-violating policy, and [that] proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs. *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009).

2

At the notice stage, a plaintiff "submit[s] evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists," and the trial "court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Wiotkowski*, 267 F.3d at 217, citing *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. at 642 (W.D. Tenn. 2009).

### III. DISCUSSION

**A. Allegations and Positions of the Parties**

Judith Kampfer was employed by the Defendants and their predecessors for nearly forty years. Kampfer worked for Fifth Third from February 2008 until March 2013 as a CSM and contends she regularly worked in excess of forty hours in a workweek. On behalf of herself and the opt-in Plaintiffs, Kampfer alleges that Fifth Third misclassified CSMs as exempt employees thereby removing them from the overtime provisions of the FLSA. Specifically, Kampfer alleges "[t]he primary job duties of Plaintiff and the Collective Action Members did not materially differ from the duties of non-exempt hourly paid employees. The performance of non-exempt duties occupied the majority of Plaintiff's and Collective Action Members' working hours." (Doc. No. 1 at ¶ 32). Moreover, Plaintiffs state that "[p]ursuant to a centralized, company-wide policy, pattern and/or practice, Defendants classified all CSMs and other similarly situated current and former employees holding comparable positions but different titles, as exempt from coverage of the overtime provisions of the FLSA." (*Id.* at ¶ 33).

Plaintiffs contend they have presented the necessary requirements for conditional certification and there is no prohibition against a second collective action. In contrast, the Defendants object to the motion because it is a second collective action against the same parties and is not an efficient use of the FLSA. Alternatively, they argue a heightened "modest plus" standard

3

of evidence applies in this case, as well as sufficient differences among the opt-in plaintiffs to deny conditional certification.

### B. A Second Collective Action under FLSA

There is no dispute amongst the parties that an identical FLSA violation was alleged against Defendants, based upon the previous classification of CSMs, in the now-concluded, *Stallard* litigation. Defendants oppose conditional certification in the present litigation because it is aimed at a group "already solicited and unequivocally uninterested" and that the present motion is "duplicative and unnecessary." (Doc. No. 39, p. 7). I disagree.

The FLSA has been characterized as "remedial and humanitarian in purpose." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). Moreover, FLSA "must not be interpreted or applied in a narrow, grudging manner." *Id*. Keeping in mind the precepts for statutory interpretation, I begin with the language itself.

The language of Section 216(b)[1] does not expressly prohibit a second collective action as correctly observed by both sides in this case. Several courts have also endorsed this position. *Akins v. Worley Catastrophe Response, LLC*, 921 F.Supp.2d 593, 598 (E.D. La. 2013) ("Had Congress wished to limit the number of collective actions that could be brought against an employer, it could have

---

[1] Any employer who violates the provisions of Section 206 or Section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief, as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and payment of wages lost and an additional equal amount as liquidated damages. *An action* to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by *any one or more employees for and in behalf of himself or themselves and other employees similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum section 207 of this title by an employer liable therefore under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title. (Emphasis added).

said that 'only one action to recover' may be maintained on behalf of a group of employees. It did not do so."); *Yates v. Wal-Mart Stores, Inc.*, 58 F.Supp.2d 1217, 1218 (D. Colo. 1999) (allowing a contemporaneous, separate collective action with identical issues where the opt-in date in the first action had passed). *See also Hautur v. Kmart Corp.*, 2015 WL 5567912 *9 (W.D.N.Y. Sept. 22, 2015); *Brown v. United Furniture Indus., Inc.*, 2015 WL 1457265 *3 (N.D. Miss. March 30, 2015).

In support of its opposition to this litigation, the Defendants cite cases prohibiting a second collective action. In reviewing those cases, I find them to be distinguishable as they involved competing similar litigation and analysis of the first-filed rule. In the case before me, there is no competing litigation and the deadline for opting into the *Stallard* case had passed when Kampher filed her case here. (Doc. No. 33-12, pp. 3, 5, 7, and 8).

Plaintiffs propose three possible groups of potential opt-in plaintffs: (1) employees who, like Kampher, did not opt into the *Stallard* litigation; (2) employees who were employed for a short duration; and (3) employees who became CSMs after the initial *Stallard* notice was mailed. The Defendants do not challenge this potential group of opt-in plaintiffs but question Kampher's motivation in not opting into the *Stallard* case. In the absence of any authority which takes motivation into consideration on the issue of a successive FLSA action, the Defendants' arguments are without merit.

As § 216(b) does not prohibit a second collective action, I find the Court can entertain Plaintiffs' request for conditional certification in this case.

### C. Conditional Certification

#### 1. Similarly Situated Potential Plaintiffs

At the notice stage of conditional certification, a lenient standard generally applies requiring the plaintiff establish a colorable basis for their claim that a class of similarly situated plaintiffs exist.

*Waggoner v. U.S. Bancorp*, 110 F.Supp.3d 759, 764-65 (N.D. Ohio 2015), citing *Comer*, 454 F.3d at 546-47. For example, claims "unified by common theories of defendants' statutory violations" are sufficient to meet this threshold. *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014), quoting *O'Brien*, 575 F.3d at 585.

Defendants advocate the "modest 'plus' factual showing" based upon the discovery already undertaken in this litigation as well as that in *Stallard*. In cases where discovery is undertaken on the issue of conditional certification, many courts have adopted a "modest plus" factual showing or hybrid approach. *See Creeley v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 823-27 (N.D. Ohio 2011) (collecting cases). This is in contrast to the "modest factual showing" standard utilized when little or no discovery has been undertaken on the issue of conditional certification. *See Waggoner*, 110 F.Supp.3d at 764-66.

At the Case Management Conference in this case, a discovery deadline was set for conditional certification issues. (Doc. No. 38). In light of the discovery undertaken on conditional certification in this case and the discovery conducted in the *Stallard* litigation, I find the "modest plus" standard to be applicable in this case. This requires an elevated factual showing, something beyond what is alleged in the pleadings and otherwise advancing the ball down the field beyond the pleadings.

The Defendants contend the collective plaintiffs are not similarly situated because their actual, day-to-day duties varied and there are significant differences in their actual experiences. Second, Defendants object the opt-in plaintiffs are similarly situated because they were not subject to the same pay practices or policies as the proposed collective plaintiffs includes persons who were paid on a salaried basis as well as those paid on an hourly basis. Finally, the Defendants argue that unique defenses apply to some of the collective members, thereby negating conditional certification.

6

In this case, the complaint characterizes the collective action to include CSMs who were paid on a salary basis and were classified as exempt during the FLSA statutory period as follows:

> 5. Pursuant to corporate policy, Fifth Third classified its CSMs as exempt from overtime pay requirements even though, and in contravention of the FLSA, Plaintiff and other CSMs primarily perform duties that are non-exempt in nature, including: working on the teller line; taking and making telephone calls with customers; greeting customers in the lobby; taking information for loan applications; answering customer inquiries; and engaging in other customer service duties such as, for example, selling banking products, opening and closing accounts, pulling daily reports, and counting and balancing cash drawers.
>
> . . . .
>
> 31. Plaintiff and other CSMs are similarly situated in that they have substantially similar job duties and are subject to Fifth Third's common compensation policies, patterns, and/or practices, including without limitation Fifth Third's misclassification of CSMs as exempt from the protections of the FLSA.
>
> . . . .
>
> 33. Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendants classified all CSMs and other similarly situated current and former employees holding comparable positions but different titles, as exempt from coverage of the overtime provisions of the FLSA.
>
> . . . .
>
> 37. Fifth Third failed to pay Plaintiff and the Collective Action Members for all hours worked as well as overtime compensation for the hours they worked over 40 in a workweek due to the policy of classifying CSMs company-wide as exempt.
>
> . . . .
>
> 42. Fifth Third has intentionally, willfully, and regularly engaged in a company-wide policy, pattern, or practice of violating the FLSA with respect to Plaintiff and the Collective Action Members, which was authorized, established, promulgated, and/or ratified by Fifth Third's corporate headquarters. This policy, pattern or practice includes but it's not limited to:
>
> a. willfully failing to record all of the time the Plaintiff and the Collective Action Members have worked for the benefit of Fifth Third;
>
> b. willfully failing to keep accurate time records as required by the FLSA or applicable state wage and hour laws;
>
> c. willfully failing to credit Plaintiff and the Collective Action Members for all hours worked including overtime hours, consistent with the requirements of the FLSA;

      d. willfully failing to pay Plaintiff and the Collective Action Members wages for all hours worked including overtime wages for hours worked in excess of 40 hours per workweek;

      e. willfully classifying Plaintiff and the Collective Action Members as exempt despite their primary duties being non-exempt in nature; and

      f. failing to provide sufficient resources in the labor budgets for non-exempt employees to complete all of the non-exempt tasks in each bank, when Defendants knew or recklessly disregarded the fact that failing to provide sufficient resources in bank labor budgets resulted in Plaintiff and other similarly-situated CSMs (who were not paid overtime) to work more than 40 hours in a workweek and primarily perform non-exempt duties during their workweeks, without receiving overtime compensation—which allowed Defendants to avoid paying additional wages (including overtime) to the non-exempt bank-level employees.

(Complaint, Doc. No. 1).

Plaintiffs also attach a copy of the CSM job description (Doc. No. 33-6), the transcripts of two of Defendants' Rule 30(b)(6) witnesses (Doc. No. 33-3 and 33-5), and all items submitted in the *Stallard* litigation. The declarations of opt-in plaintiffs include those of Misty McGregor (Doc. No. 33-8) and Cynthia Sipos (Doc. No. 33-9). Also submitted are depositions, opt-in notices, proposed notices, and all orders from the *Stallard* litigation.

Of significance to this determination is the deposition of Sandra Holzgen, Defendants' corporate representative, taken in the *Stallard* litigation. While being questioned about the individual responsibilities of CSMs, Holzgen was asked:

Q:     How is the job performance of CSMs measured?

A:     There are goals that are set up for each- - for that position, for the CSM position, and they're measured based on the responsibilities of the role.

Q:     And the responsibilities of the role are what you just previously testified to?

A:     Yes.

Q: And those are the primary duties of all CSMs, correct?

A: They're - - you know, because we have such a wide network of distribution in our CSMs and we have CSMs that have different skill levels across our organization, some CSMs may be involved in different projects or in different duties.

**The primary responsibilities are the same for all CSMs. The day-to-day responsibilities are - - are the same.**

Q: Okay. And is this the - - is a form used to - - like for performance evaluations of CSMs?

A: Correct.

Q: And is - - is it the performance management form?

A: Yes.

Q: Okay. Okay. And it's the same form that's used throughout the country for all CSM's?

A: The form is the same.

Q: And regardless of the location or state in which a CSM works, they use the same performance evaluation form, correct?

A: **They use the same evaluation form.**

(Doc. No. 33-3, pp. 93-94) (Emphasis added). Holzen also testified that there was a singular job description for all CSMs regardless of their location. (*Id.* at pp. 76-78); (Doc. No. 33-6).

At the initial certification stage, the putative collective positions must be shown to be "similar, not identical, to the positions held by the putative class members." *Lewis v. Huntington Nat.*

9

*Bank*, 789 F.Supp.2d 863, 867-68 (S.D. Ohio 2011). The Defendants' corporate representative's deposition testimony undercuts Defendants' argument that the collective plaintiffs were not similarly situated. Testimony which supports the similarity of CSM day-to-day duties, a singular job description adopted by the Defendants for this position, and utilization of the same evaluation form for all CSMs is more than sufficient to meet the "modest plus" showing in this instance. I also agree with Judge Hornak's finding, "[w]here, as here, there has been some discovery aimed at these matters, arguably an incrementally higher standard applies, but it is not so substantially greater as to convert the question before the court to one involving a dispositive merits resolution of the issues at hand." *Stallard*, 2013 U.S. Dist. LEXIS 186531 at *2 (W.D. Pa. 2013).

Defendants' second argument challenging similarly situated opt-in plaintiffs takes aim at those CSMs who were paid on a salaried basis as well as those paid on an hourly basis. Plaintiffs state they are only seeking to certify a collective action for those CSMs who were paid a salary and classified as exempt during the FLSA statutory period. (Doc. No. 40 at p.5). There appears to be no dispute the Defendants reclassified all CSMs from exempt to non-exempt in the fall of 2014.[2] Thus, the Defendants' second argument for a collective class containing both salaried and hourly employees is without merit as the collective action is limited to those CSMs who were paid a salary.

The Defendants' third argument regarding the "unique defenses" by putative class members is likewise of little moment. A determination on conditional certification is not final and is subject to decertification. The Defendants' reliance on *Frye v. Baptist Memorial Hospital, Inc.*, 495 Fed. Appx. 669 (6th Cir. 2012) is misplaced as *Frye* concerned a decertification ruling, something not yet before

---

[2] In her declaration, Defendants' Vice President and Employee Relations Advisor, Meaghan Ruehl, stated, "[b]eginning in September 2014, however, Fifth Third re-classified its CSMs as non-exempt employees and began to pay them on an hourly basis, including overtime at the rate of one and one half times their regular rate for any hours worked over 40 per week."
(Doc. No. 39-2 at ¶ 5).

10

this Court. "At the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Swigart v. Fifth Third Bank*, 276 F.R.D. at 214, n7. *See also Waggoner*, 110 F.Supp.2d at 769 (declining to consider evidence of employee exempt status as it was a merits determination).

### 2. Proposed Scope and Form of Notice

Plaintiffs request notice "issue to Fifth Third CSMs who were classified as exempt from overtime at any time from May 7, 2012 to the date Fifth Third reclassified the CSM position as non-exempt and started paying CSMs overtime wages (excepting, as noted, those CSMs whose claims were entirely resolved in *Stallard*)." (Doc. No. 33 at p. 14). In contrast the Defendants advocate the three year period from the date the notice itself is sent. (Doc. No. 39 at p. 19).

Over the Defendants' objections, I will allow the time period three years prior to the filing of the motion for conditional certification. Defendants object to any reference to the previous litigation arguing it is potentially prejudicial. I am not convinced prejudice inures to either side on this issue but will allow counsel for the parties a brief opportunity to meet and confer. If the parties are unable to come to a resolution on this issue, the Plaintiff's proposed notice will be adopted.

### IV. PLAINTIFFS' MOTION FOR EQUITABLE TOLLING

Plaintiff also moves for equitable tolling of the statute of limitations to protect the interests of potential opt-in plaintiffs. The Defendants oppose equitable tolling as premature and object that Plaintiffs have not established extraordinary circumstances to justify departing from the plain mandate of the statute. I disagree.

Equitable tolling "allows courts to toll a statute of limitations when a 'litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's

control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).   The party invoking equitable tolling bears the burden of establishing entitlement to this legal doctrine.  *Struck v. PNC Bank N.A.*, 931 F.Supp.2d 842, 846 (S.D. Ohio 2013) citing *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  The doctrine of equitable tolling is typically used "only sparingly." *See Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 90 (1990).  Moreover, a decision on equitable tolling "lies solely within the discretion of the trial court." *Baeden-Winterwood v. Life Time Fitness*, 484 F.Supp.2d 822, 826 (S.D. Ohio 2007), citing *Truitt v. City of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

>  The Sixth Circuit has listed five factors for consideration in an equitable tolling analysis:
>
> (1)  The petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Cook v. Comm'r of Social Security*, 480 F.3d 432, 437 (6th Cir. 2007).  This is not a comprehensive list nor are all these factors necessarily relevant in every case.  *Allen v. Yukins*, 366 F.3d at 401.  Rather, the appropriateness of equitable tolling "is determined on a case-by-case basis."  *Truitt v. Cnty of Wayne*, 148 F.3d at 848.

The Defendants argue such relief is premature as the Plaintiffs are not asking for relief on their own behalf but on behalf of the potential opt-in plaintiffs.  Certainly a number of district courts have rejected equitable tolling on those very grounds.  *See Atkinson v. Teletech Holdings, Inc.*, 2015 WL 853234 (S.D. Ohio 2015); *In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act and Wage and Hour Litigation*, 2014 WL 3695750 (W.D. Ky. 2014).  Other courts have tolled the statute of limitations for potential opt-in FLSA plaintiffs.  *Struck*, 931 F.Supp.2d at 846-49; *Baden-Winterwood v. Life Time Fitness*, 484 F.Supp.2d 822  (S.D. Ohio 2007); *Engle v. Burlington Coat Factory Direct Corp.*, 2013 WL 5177184  (S.D. Ohio 2013); *Thompson v. Direct General Consumer Products, Inc.*, 2014 WL 884494 (M.D. Tenn. 2014).  *See also, Chime v. Peak Security Plus, Inc.*, __F.Supp.3d__, 2015 WL 5773951 (E.D. N.Y. 2015); *Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264  (S.D. Iowa 2011).

*See e.g., Bradford v. Roadhouse*, __F.Supp.3d__, 2015 WL 5794545 (N.D. Tenn. 2015) (declining to rule on tolling as it was an underdeveloped issue at that juncture of the proceedings).

While this issue is the subject of debate among some of my trial court colleagues in this Circuit, I find there is a valid reason to allow limited equitable tolling in this case. As noted by the Sixth Circuit, "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Truitt*, 148 F.3d at 648.

Here, Plaintiffs broached the subject of tolling at the initial Case Management Conference on April 8, 2015, with no interest from the Defendants. On May 7, 2015, Plaintiffs moved for conditional certification and the motion was fully briefed as of August 13, 2015. Six months after filing its motion on conditional certification, Plaintiffs moved for equitable tolling of the statute of limitations. This situation represents a delay beyond the movant's control and exhibits the Plaintiffs' diligence. In addition, as the movants sought an agreement on tolling from the outset of this litigation, the Defendants can hardly complain of prejudice in this case.

Under these specific circumstances, I find the relevant factors tipping the balance in favor of equitable tolling. *See Struck*, 931 F.Supp2d, at 846-49. *See also Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. at 276 (allowing tolling from date certification motion filed to the outset of the notice period); *Jackson v. Bloomberg L.P.*, 298 F.R.D. 153, 170 (S.D.N.Y. 2014) (equitable tolling granted where plaintiff moved quickly for conditional certification and the motion was fully briefed for over seven months). The statute of limitations in this case is tolled from May 7, 2015 until ten (10) days following the issuance of this Order.

### V. CONCLUSION

For the reasons stated above, Plaintiffs' motion for conditional certification (Doc. No. 33) is granted. Plaintiffs' motion for equitable tolling (Doc. No. 42) is also granted. The statute of limitations is tolled from May 7, 2015 until ten (10) days after the issuance of the present Order.

Finally, this matter is scheduled for a telephonic status conference on **April 7, 2016 at 11:00 AM**.  Counsel to call the bridge line at (877) 411-9748, Access Code 1231873.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge